## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

MARCOS PANAYIOTOU,

*Defendant.*

No. 22-cr-55 (DLF)

## <u>MEMORANDUM OPINION</u>

For his conduct at the United States Capitol on January 6, 2021, defendant Marcos Panayiotou pleaded guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G), Dkt. 22.  At sentencing, the government urged the Court to impose a sentence of "45 days' incarceration followed by 36 months' probation."  Gov't Sentencing Mem. at 1, Dkt. 27.  The Court held, as it has in previous cases,[1] that federal law authorizes no such sentence: "[A] term of *supervised release* [may] follow imprisonment," U.S.S.G. § 5D1.1(a) (emphasis added), but a term of probation is "*an alternative* to incarceration" for a given criminal offense, *id.* ch. 5, pt. B intro. cmt. (emphasis added).

Judgment was docketed on January 19, 2023, Dkt. 32.  But because this question has proven to be a recurring issue in prosecutions related to the January 6, 2021 Capitol riot, and because it has divided the judges of this Court,[2] this opinion further explains the reasons for the Court's ruling: namely, why a compound sentence of a term of imprisonment and a term of probation, jointly imposed for conviction of a single petty misdemeanor offense, is unlawful.

---

[1] For the Court's first such ruling, see *United States v. Williams*, 21-cr-45, Dkt. 42 (Feb. 9, 2022).

[2] To date, at least nine judges have adopted the government's position.  *See* Gov't Sentencing Mem. at 25–26; *see also, e.g.*, *United States v. Little*, 590 F. Supp. 3d 340 (D.D.C. 2022) (RCL).

I.      **STATUTORY BACKGROUND**

A.      **General Framework**

The Double Jeopardy Clause bars a court from imposing "multiple punishments for the same offense." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (citing U.S. Const. amend. V). "With respect to cumulative sentences imposed in a single trial," the sole test is whether "the sentencing court . . . prescrib[ed] [a] greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see Jones*, 491 U.S. at 381 ("[S]entencing courts [cannot] exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments.").

In the federal system, criminal sentencing is governed by the Sentencing Reform Act of 1984 (SRA), which overhauled the U.S. sentencing regime and to this day "comprehensively delineate[s] the federal sentencing system." *Cunningham v. California*, 549 U.S. 270, 286 (2007). The Act rewrote chapter 227 of the Federal Criminal Code, which now opens by defining a new set of "[a]uthorized sentences" structured as follows:

> An individual found guilty of an offense shall be sentenced, in accordance with the provisions of [18 U.S.C. §] 3553, to —
>
> > (1) a term of probation as authorized by subchapter B;
> > (2) a fine as authorized by subchapter C; or
> > (3) a term of imprisonment as authorized by subchapter D.
>
> A sentence to pay a fine may be imposed in addition to any other sentence. A sanction authorized by [18 U.S.C. §§] 3554, 3555, or 3556 may be imposed in addition to the sentence required by this subsection.

SRA, Pub. L. No. 98-473, sec. 212(a)(2), § 3551(b), 98 Stat. 1837, 1988 (1984); *accord* 18 U.S.C. § 3551(b) (2018). Subchapter A of chapter 227 contains general provisions, including § 3551; and the remaining three subchapters cover probation, fines, and imprisonment, respectively. *See generally* 18 U.S.C. ch. 227.

B.        The SRA and Court Supervision

The SRA abolished "the previous . . . parole release system," SRA § 236(a)(1), and established a new regime consisting of two alternative means of court supervision. One, supervised release, allows for "*postconfinement* monitoring overseen by the sentencing court." *Johnson v. United States*, 529 U.S. 694, 697 (2000) (emphasis added). The other, probation, is "a sentence in and of itself." U.S.S.G. ch. 5, pt. B intro. cmt.[3] Probation, unlike supervised release, is enumerated in the set of distinct punishments available under § 3551. *See* 18 U.S.C. § 3551(b). And while "Probation" occupies its own dedicated subchapter in the SRA, *see* 18 U.S.C. ch. 227, subch. B, a court's authority to impose supervised release is instead discussed within the subchapter for "Imprisonment," *see* 18 U.S.C. § 3583.

In almost all respects, "[t]he conditions of supervised release authorized by statute are the same as those for a sentence of probation." U.S.S.G. ch. 7, pt. A, note 2(b). The one exception is that, as a condition of probation, a sentencing judge may impose a period of intermittent confinement in prison; a court cannot impose such additional prison time for a defendant who is on postconfinement supervised release. *See* 18 U.S.C. §§ 3563(b)(10), 3583(d).[4] In other words, while both probation and supervised release entail the same range of legal consequences, those consequences take effect at different periods of time relative to incarceration: Probation is a standalone sentence that might allow for intermittent imprisonment during its term, while supervised *release*—as the name implies—follows a term of imprisonment that has been completed in full. Thus, for example, "if the court wishes to impose a 'split sentence' under which

---

[3] The Sentencing Guidelines are advisory, see *United States v. Booker*, 543 U.S. 220 (2005), and they do not apply to petty offenses, *see* U.S.S.G. § 1B1.9. The Court cites them only for their persuasive value in interpreting the SRA.

[4] The Court may, however, impose intermittent confinement for a *violation* of the terms of supervised release. 18 U.S.C. § 3583(d).

the defendant serves a term of imprisonment followed by a period of community confinement or home detention," it "must" impose "[a] term of supervised release" that follows a prison term, rather than a sentence of probation.  U.S.S.G. § 5D1.1 app. note 4.

The SRA also sets the authorized durations of probation and supervised release.  Those rules by default turn on an SRA-defined "classification" of each offense.  18 U.S.C. § 3559.  For felonies (crimes with a maximum prison term greater than one year, *id.* § 3559(a)(1)–(5)), the maximum term of supervised release is five years, three years, or one year, depending on the class.  *Id.* § 3583(b)(1)–(2).  For Class A misdemeanors (crimes with a maximum prison term greater than six months but no more than a year, *id.* § 3559(a)(6)), the maximum term of supervised release is one year.  *Id.* § 3583(b)(3).  And for "petty offenses" (crimes with a maximum prison term of at most six months), no supervised release is permitted at all.  *Id.*; *see id.* § 19 (defining "petty offense" as a Class B misdemeanor, Class C misdemeanor, or infraction); *id.* § 3559(a)(7)–(9) (maximum prison terms for Class B misdemeanors, Class C misdemeanors, and infractions all at most six months).  For all crimes, the maximum term of probation is substantially higher than the maximum term of post-imprisonment supervised release.  All felonies and misdemeanors carry a maximum probation term of five years,[5] 18 U.S.C. § 3561(c)(1)–(2), and infractions carry a maximum of one year, *id.* § 3561(c)(3).

The SRA contains an additional constraint on a sentencing judge's use of probation, 18 U.S.C. § 3561(a)(3), the provision at issue here.  As enacted in 1984, the SRA precluded a court

---

[5] Probation is unavailable for individual defendants convicted of crimes that have a five-year period of supervised release, Class A and Class B felonies, which are the most serious offenses in the Criminal Code.  18 U.S.C. § 3561(a)(1).  While that at first might seem anomalous, it is consistent with a graduated penalty scheme because probation is only a *substitute* for a term of imprisonment.  In other words, this rule precludes a court from imposing a probation-only sentence for particularly grave felonies.

from imposing probation where "the defendant is sentenced at the same time to a term of imprisonment for the same *or a different offense*."  SRA sec. 212(a)(2), § 3561(a)(3) (emphasis added).  That provision meant that probation was not just unavailable for an offense when imprisonment was imposed for the *same offense*, but also when the defendant was simultaneously sentenced to imprisonment on *any other offense*.  That is, under this provision, imprisonment and probation were to be mutually exclusive punishments not just for a given offense, but for a defendant's sentence as a whole.

In 1994, Congress amended § 3561(a)(3) by inserting the language the government now relies on.  Specifically, it amended the statute by providing that probation is unavailable if "the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense *that is not a petty offense*."  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 280004, 108 Stat. 1796, 2096 (emphasis added); *see* 18 U.S.C. § 3561(a)(3).  The government contends that, as amended, this statute empowers a court to impose both imprisonment and probation for a *single* petty offense.  The Court disagrees for the reasons that follow.

## II.    ANALYSIS

The defendant in this case pleaded guilty to a single misdemeanor offense.  40 U.S.C. § 5104(e)(2)(G); *see id.* § 5109(b).[6]  The question before the Court is whether the 1994 addition of "that is not a petty offense" to 18 U.S.C. § 3561(a)(3) allows the Court to sentence such a

---

[6] The Court concluded that a sentence of 36 months' probation is sufficient but not greater than necessary to ensure that the purposes of sentencing are achieved.  Judgment at 2.  During his three-year period of probation, the defendant will be subject to various conditions, including 14 days' intermittent confinement.  *Id.* at 4.  Among other things, the three-year term of supervision, coupled with a short term of intermittent confinement, will help ensure the safety of the public and deter the defendant from committing future criminal acts.

defendant to both a term of imprisonment and a term of probation.  The text and structure of the SRA make clear that the answer is no.

    **A.**    **Text**

        1.    *18 U.S.C. § 3551*

The framework provision of the SRA, 18 U.S.C. § 3551, states that a defendant "shall be sentenced . . . to a term of probation as authorized by subchapter B; a fine as authorized by subchapter C; *or* a term of imprisonment as authorized by subchapter D."  18 U.S.C. § 3551(b) (emphasis added).  While "or" might sometimes mean an inclusive "and/or," here, it is clear that "or" requires a court to choose one, and only one, of the three options.  That is so because the subsequent sentence of § 3551(b) further provides that "[a] sentence to pay a fine may be imposed *in addition* to any other sentence," *id.* (emphasis added), and that certain other penalties— forfeiture, notice to victims, and restitution, *id.* (citing 18 U.S.C. §§ 3554–3556)—may also be imposed in addition to any other sentence.  By negative implication, the penalties not explicitly listed in this list—imprisonment and probation—may not be imposed together.  "This is the maxim of *expressio unius est exclusio alterius* at work: Mention of one thing"—fines imposed on top of imprisonment or probation—"implies exclusion of another thing"—probation imposed on top of imprisonment.  *Nasdaq Stock Market LLC v. SEC*, 38 F.4th 1126, 1137 (D.C. Cir. 2022) (cleaned up).  Were the word "or" to be interpreted otherwise, the proviso allowing for a fine "in addition to any other sentence" would be "render[ed] superfluous."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001) (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 561 (1990)).

Indeed, the government appears to concede this point.  Its sentencing memorandum interprets § 3551 to mean that "a judge must sentence a federal offender to *either* a fine, a term of probation, or a term of imprisonment."  Gov't Sentencing Mem. at 28 (emphasis added) (quoting

*United States v. Kopp*, 922 F.3d 337, 340 (7th Cir. 2019)); *see also Kopp*, 922 F.3d at 340 (explaining that a court must "select[] one of those options").  The text of § 3551 unambiguously prohibits a court from imposing a sentence of both probation and imprisonment—a result that is, for the reasons explained *supra* Part I and further below, consistent with the structure of the SRA as a whole.

2.     *18 U.S.C. § 3561*

Prior to the 1994 amendment, § 3561 went further than § 3551 by precluding a sentence of probation not just on the *same* count on which the court ordered imprisonment, but also whenever the court sentenced the defendant to imprisonment on *any* count.  It is undisputed that the addition of "that is not a petty offense" to the end of that phrase abrogated that rule (that imprisonment on one count precludes probation on all others) where the imprisonment is imposed for a "different" petty "offense."  But the government argues that the 1994 amendment did more than that.  On the government's reading, the amendment also permits a court to impose probation for a count when imprisonment is imposed on the "same" petty "offense"; the additional 1994 language purportedly modifies both "same" and "different offense."  But this conclusion is far from clear based on the text of § 3561, let alone the remainder of the SRA.

In general, two competing canons of statutory interpretation control whether a phrase modifies part or the whole of a preceding term.  One, the series qualifier canon, teaches that "a modifier at the end of the list normally applies to the entire series."  *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169 (2021) (cleaned up).  The other, the "rule of the last antecedent," provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Lockhart v. United States*, 577 U.S. 347, 351 (2016) (alteration in original) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).  The decision of which rule

reflects the correct reading of a statute is necessarily context dependent.  *Id.* at 352.

Here, choosing between these two options in isolation is difficult because neither reading implies an artful drafting by Congress.  Under the series qualifier approach, the phrase "that is not a petty offense" would directly modify the phrase "same . . . offense."  The relevant part of the statute relied on the government would effectively read: "the same . . . offense that is not a petty offense."  But the restrictive "that" clause would not be used by an ordinary English speaker to modify "the same offense" because the "offense" has already been referenced previously—the sentence in full is: "A defendant who has been found guilty of an offense [may not be sentenced to probation if he is] sentenced at the same time to a term of imprisonment for the same . . . offense that is not a petty offense."  Because "the same offense" refers backed to the already-mentioned "offense"—*i.e.*, the offense for which the defendant is being sentenced—a more natural phrasing would be: "sentenced at the same time to a term of imprisonment for the same offense *if it* is not a petty offense."[7]  No such problem arises for the phrase "a different offense that is not a petty offense," because the phrase "a different offense" is a new noun that suggests a range of possible offenses in turn restricted by "that is not a petty offense."  That divergence makes it strange to read the phrase as qualifying both parts of the series—the same offense and a different offense.

The last antecedent approach, however, creates its own problems.  Under this approach, "that is not a petty offense" refers only to "a different" offense, not "the same" offense.  But for there to be multiple antecedent nouns, the Court must read in an omitted word "offense" after the

---

[7] Or, more likely still, Congress would more naturally choose to amend § 3551, not § 3561, to allow for a compound sentence of probation on top of imprisonment for petty misdemeanors, just as § 3551 expressly allows for fines and certain other penalties to be imposed on top of other criminal sanctions.

word "same": *i.e.*, "the same *offense* or a different offense that is not a petty offense."[8]   More naturally, the adjectival "same" would be distributed to modify the later "offense" that follows the word "different."   The choice of phrase "same or different offense" makes more sense considering the statutory history: That phrase came from the pre-1994 version of the statute passed under the SRA, *see* SRA sec. 212(a)(2), § 3561(a)(3).   In that pre-1994 version, nothing turned on whether the section provided that probation was barred where imprisonment was imposed "for the same or a different offense" or "for the same offense or a different offense": The meaning would be the same regardless.   That vestigial language becomes more troublesome, however, upon the addition of the 1994 modifier.

    "While [the] rules [of grammar] may be a useful guide to statutory meaning, they cannot resolve meaning when divorced from the text and structure of the statute."   *Sandoz Inc. v. Becerra*, 22-5202, 2023 WL 139560, at *9 (D.C. Cir. Jan. 10, 2023); *see also Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2448 (2021) ("[T]he most grammatical reading of a sentence in a vacuum does not always produce the best reading in context.").   Because "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000), the Court next considers "the broader context of the statute as a whole," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

---

[8] The government agrees that this phrasing "would imply that the final modifier—*i.e.*, 'that is not a petty offense'—applies only to 'different offense.'"   Gov't Sentencing Mem. at 31.

**B.**      **Structure**

The structure of the SRA confirms what § 3551 makes clear: A court cannot impose a sentence of imprisonment and a sentence of probation for a single offense.  Section 3561 adds *further* restrictions on probation: It forbids probation where the defendant, for instance, has been convicted of a Class A or B felony, *id.* § 3561(a)(1), or has simultaneously been sentenced to prison for a different nonpetty offense, *id.* § 3561(a)(3).  Those clauses add to § 3551's limitation on the use of probation—they do not displace its basic restriction.  In the Court's view, the SRA as a whole, *see supra* Part I, underscores that probation is a separate sentence, an alternative to imprisonment, while supervised release is a supplement and is imposed in tandem with imprisonment.  And in particular, three salient provisions of the SRA highlight the obvious incompatibility of the government's reading of § 3561 and the remainder of the Act.

1.      *Authorized Terms of Supervised Release*

Most glaringly, reading § 3561 to permit an imprisonment-then-probation sentence would transform it into an end-run around two clear commands of Congress: First, that the SRA's mechanism for "postconfinement monitoring" is supervised release, *Johnson*, 529 U.S. at 697, and second, that no supervised release is permitted for petty offenses, 18 U.S.C. § 3583(b).

The SRA's ban on postconfinement supervision for petty offenses was a considered choice of Congress.  The original version of the SRA permitted up to one year of supervised release for all misdemeanor offenses.  *See* SRA sec. 212(a)(2), § 3583(b)(3).  But in 1987, Congress added the phrase "other than a petty offense" to § 3583(b) to expressly exclude petty offenses from supervised release entirely.  *See* Pub. L. No. 100-182, § 8, 101 Stat. 1266, 1267.  The government's reading would thus be inconsistent with Congress's judgment, formalized in the SRA and its 1987 amendment, that defendants convicted of petty offenses should not be subject to postconfinement

restrictions on their liberty.

Indeed, the government's reading would turn the SRA's scheme for postconfinement supervision on its head.  The SRA sets up diminishing lengths of maximum postconfinement supervised release based on the classification of the offense: Following imprisonment, the maximum authorized term of supervised release for Class A and B felonies is five years; for Class C and D felonies, three years; for Class E felonies and nonpetty misdemeanors, one year; and for petty offenses, no time at all.  18 U.S.C. § 3583(b).  But under the government's theory, prosecutors could circumvent this rule for a petty misdemeanor—and *only* for a petty misdemeanor—and subject a petty offender to *five years of probation* with all the same restrictions as a period of supervised release.  This result would not only be at odds with Congress's deliberate decision to eliminate supervised release for petty offenses, it also would authorize the same postconfinement supervision period as that reserved for the most serious felonies and nearly double that allowed for Class C and D felonies.  This inversion occurs because, for all offenses, petty and nonpetty, the maximum term of probation is always substantially greater than the maximum term of supervised release.  Those term differences make sense when probation is a substitute for, not a supplement to, incarceration for a given offense, but they would become absurd if probation could be used together with imprisonment only for petty offense convictions.

It is no answer to say that this outlier five-year period would be a term of probation rather than a term of supervised release—the two are functionally the same.  As the government aptly puts it:

> In passing the Sentencing Reform Act, Congress sought generally to abolish the practice of splitting a sentence between imprisonment and probation because "the same result" could be accomplished through a "more direct and logically consistent route," namely the use of supervised release as set out in 18 U.S.C. §§ 3581 and 3583. S. Rep. No. 98-225, 1983 WL 25404, at *89; *accord* United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5B1.1, Background.

Gov't Sentencing Mem. at 29.  If Congress wished to undo its prohibition on postconfinement monitoring for petty offenses, the most natural choice would have been to amend § 3583(b), the section that Congress amended in 1987 to implement its prohibition in the first place.  In contrast, in the government's view, in six words—"that is not a petty offense"—Congress not only overrode its own 1987 amendment, it also imposed, without elaboration, five times as much supervision as previously authorized for petty offenses.  That interpretation would violate the oft-repeated canon that Congress does not "hide elephants in mouseholes."  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

### 2.     *Intermittent Confinement*

The government's view would also imply that Congress, in 1994, *sub silentio* displaced the clear limits it has placed on judges' imposition of imprisonment as a condition of probation.  The SRA allows that "[t]he court may provide, as further conditions of a sentence of probation . . . that the defendant . . . remain in the custody of the Bureau of Prisons *during nights, weekends or other intervals of time*, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release."  18 U.S.C. § 3563(b)(10) (emphasis added).  That option is unavailable, in contrast, during a term of post-imprisonment supervised release.  *Id.* § 3583(d).

Section 3563(b)(10) allows for a judge to impose only *intermittent* confinement as a condition of probation.  "Nights, weekends, or other intervals of time" refers to short periods of confinement; under the *ejusdem generis* canon, the phrase "other intervals of time" must be "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Wash. State Dep't of Social & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003) (quoting *Circuit City*, 532 U.S. at 114–15).  Thus, in context, the type

of commitment authorized as a condition of probation consists only of short periods of confinement, which can be interspersed throughout a period of probation. *See, e.g.*, *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999) (rejecting a sentence of six months' imprisonment imposed continuously, rather than intermittently, as a condition of probation).

In other words, the availability of intermittent confinement presents courts with a choice for petty offenses: Sentence a defendant to up to six months' imprisonment with no supervised release, or opt for a sentence of up to five years' probation, with up to six months of intermittent confinement interspersed during the first year. *See* S. Rep. No. 98-225, at 98 (Intermittent confinement "is *not* intended to carry forward the split sentence provided in [the pre-SRA] 18 U.S.C. § 3651, by which the judge imposes a sentence of a few months in prison followed by probation." (emphasis added)); *see also, e.g.*, *United States v. Mize*, 97-40059-01, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) ("[M]aking a 30 consecutive day term of prison a condition of probation is too similar to the 'split sentence' approach which Congress intended to abolish with" the SRA.). The government's reading would effectively bypass that constraint: A court could, instead, impose a straight term of imprisonment followed by an additional straight period of probation, a compound sentence that was banned by the SRA and replaced by the intermittent-confinement regime.

The Court is sympathetic to the fact that, during the COVID-19 pandemic especially, it has at times been impractical for courts to impose intermittent confinement as a condition of probation. In fact, until recently, this Court declined to impose a condition of intermittent confinement, and instead imposed either home confinement or home detention, due to concerns about spreading the virus within detention facilities. *See* Sentencing Tr. at 26, *United States v. Williams*, 21-cr-45 (Feb. 9, 2022), Dkt. 42. During this same period, "the government . . . refrained from requesting

such a sentence in Capitol breach cases given the potential practical and logistical concerns involved when an individual repeatedly enters and leaves a detention facility during an ongoing global pandemic." Gov't Sentencing Mem. at 36.   But there is no question that Congress has been well aware of the COVID-19 pandemic and its health risks and the accompanied burdens that it has imposed on the prison system.   *See, e.g.*, Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020) (authorizing the Attorney General to "lengthen the maximum amount of time for which" the Bureau of Prisons "is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2)).   Still, it has chosen not to create an exception to the intermittent-confinement regime.   This Court has no authority to overrule its judgment.

### 3.   *Revocation*

Finally, the government's view runs headlong into the SRA's separation of its provisions for revocation of probation, 18 U.S.C. § 3565, and those for revocation of supervised release, *id.* § 3583(e), (g)–(i).   When a defendant violates a condition of probation, the sentencing judge may "revoke the sentence of probation and resentence the defendant under subchapter A," *i.e.*, choose from the slate of options provided by § 3551: probation, fine, and imprisonment.   *Id.* § 3565(a)(2). For a supervised release violation, in contrast, no new sentence is imposed; the court may, however, "require the defendant to serve in prison all or part of the term of supervised release authorized by statute."   *Id.* § 3583(e)(3).

Resentencing from scratch for a probation violation makes sense where probation has been used as an alternative to a term of imprisonment.   But under the government's theory, it leads to bizarre results.   Take, for example, the government's proposed sentence here.   If the Court were to hand down a sentence of "45 days' incarceration followed by 36 months' probation," Gov't

Sentencing Mem. at 1, and the defendant violated a condition of his probation, the Court could again, in the government's view, impose a new sentence of imprisonment and probation. In turn, if the defendant violated probation once more, the same sentence could follow—and so on, *ad infinitum*. In contrast, a violation of supervised release can also lead to a sentence of imprisonment, but it is a *supplemental* prison term that Congress has appropriately cabined: When a court calculates the permissible period of supervised release following imprisonment for a violation of supervised release, any time already served for an earlier supervised release violation is subtracted from the maximum, so that supervised release eventually runs out and no more can follow a period of confinement for a violation. *See* 18 U.S.C. § 3583(h). Thus, when no more supervised release can follow, the defendant has completed his sentence upon release from imprisonment. No such constraint exists for probation violations because there is no reason for one: Congress never contemplated in the SRA that probation could be imposed *in addition to* a term of imprisonment. As a consequence, the government's reading could lead to an infinite loop of imprisonment, probation, violation, imprisonment, and probation again—a nonsensical result that would inexplicably apply to petty offenses alone.

*     *     *

The government's reading of § 3561 expressly contravenes one provision of the SRA (§ 3551, which prohibits the joint imposition of probation and imprisonment for a single offense) and creates an irreconcilable conflict with at least three others: the bar on supervised release for petty offenses, 18 U.S.C. § 3583(b)(3); the restrictions on intermittent confinement imposed as a condition of probation, *id.* § 3563(b)(10); and the rules for revocation of probation and supervised release, *id.* §§ 3565, 3583(e), (g)–(i). It also undermines the basic distinction between probation and supervised release consistently reaffirmed throughout the SRA. A narrower reading of the

15

1994 amendment, in contrast, renders the statutory scheme coherent and consistent.

### C.    The Government's Counterarguments

The government's remaining arguments—in this case and others before the Court—fail to persuade.

First, the Court is unconvinced that § 3561 must override other provisions of the SRA because it is later-enacted and purportedly more specific than the framework created by § 3551. That interpretive rule is undoubtedly a helpful guide when a subsequent statute might be interpreted as an exception to a preexisting general rule.  *See, e.g.*, *United States v. Est. of Romani*, 523 U.S. 517, 530 (1998).  But for the reasons already explained, it makes little sense to interpret § 3561 as a wrench thrown into the underlying framework of the SRA.  In interpreting comprehensive schemes like the SRA, the Court must be equally if not more mindful of the Supreme Court's instruction that statutes must be read to be harmonious, coherent, and consistent; and that implied repeals are disfavored.  "[A] specific statute will not be controlled or nullified by a general one," *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974), but neither will a later-enacted statute be construed to "repeal" the earlier one unless such intent is "clear and manifest," *id.* at 551 (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939)).  "When confronted with two Acts of Congress allegedly touching on the same topic . . . [courts] come armed with the strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (cleaned up).  And even if there were any ambiguity remaining after the Court's consideration of the SRA's text, structure, and statutory history— which there is not—the rule of lenity too would militate against the government's reading.  *See United States v. Bass*, 404 U.S. 336, 347 (1971); *cf. Hunter*, 459 U.S. at 368 (holding that

16

authorization of cumulative sentences for the same offense requires "clearly expressed legislative intent").

Second, it is incorrect that the Court's interpretation would render the 1994 amendment to § 3561 superfluous. The function of the 1994 amendment was not to override § 3551 or to create an exception to it, but rather to pull back how far § 3561 previously extended. Specifically, it makes a sentence of probation possible on a charged offense where a sentence of imprisonment was imposed on *another*, petty count—which was not possible under the original text of § 3561. Put another way, when a court imposes a term of imprisonment for a petty offense, all postconfinement supervision remains barred for that offense because no term of supervised release is permitted. But a court can now impose a sentence of probation on a different count, including on a different petty offense.[9] This understanding of the 1994 amendment, unlike the reading proposed by the government, leaves the basic distinction between probation and supervised release intact, thereby avoiding the consequences Congress did not likely intend, *see supra* Section II.B. At the same time, it allows for the flexibility to sentence a defendant to probation on one count when imprisonment has been imposed on another, but only where imprisonment is imposed on a petty offense—*i.e.*, when the prison sentence does not allow for a period of supervised release.

Finally, the "[e]xcept as otherwise provided" language in § 3551 does not imply that § 3561 is an "exception" to § 3551; that argument seems to be based on an oversight as to the text of

---

[9] In fact, a report of the House Judiciary Committee stated precisely this rationale in considering another proposal just a few years earlier. The committee report explained that because "supervised release is unavailable for petty offenses," the committee aimed to "enhance sentencing flexibility by permitting a court to impose a term of probation for a petty offense if the defendant is at the same time sentenced to a term of imprisonment for another petty offense." H.R. Rep. No. 102-242, at 192 (1991). The Court accords no weight to this statement in interpreting the relevant statutory language—even if it would have otherwise been probative at all, its accompanying legislation was never enacted—but the report nonetheless confirms that the Court's interpretation of § 3561 does not deprive the amendment of effect.

§ 3551. The phrase "except as otherwise provided" is found not in subsection (b), but in subsection (a), and it modifies the phrase "a defendant . . . shall be sentenced in accordance with the provisions of this chapter." 18 U.S.C. § 3551(a). That chapter, chapter 227, contains both § 3551 and § 3561, and was rewritten in full by the SRA. In other words, "except as otherwise provided" simply makes clear that, unless specifically noted otherwise, chapter 227, rather than provisions outside of it, controls the rules for federal sentencing. It does not mean that subsection (b) of § 3551, which instructs a court to choose only one of probation or imprisonment, is subject to certain "[e]xcept[ions] . . . otherwise specifically provided." If anything, the text and structure of § 3551 make clear what is already apparent from the structure of the SRA as a whole: unless a court is instructed to apply a non-SRA provision, which is not the case here, the statute must be interpreted to be a cohesive, coherent whole.

## CONCLUSION

To date, the government has not cited *a single instance* before January 6, 2021 in which a court has handed down a sentence under the SRA consisting of a term of imprisonment followed by a term of probation jointly imposed for one offense.[10] Nor has the Court, in its own research,

---

[10] *United States v. Posley*, 351 F. App'x 807 (4th Cir. 2009), relied on by the government, involved a sentence in which imprisonment was "a special condition of his probation," *id.* at 807.

Indeed, even in the year *after* the Capitol riot, the government itself tacitly acknowledged the unavailability of this kind of sentence. In a December 2021 sentencing memorandum before this Court, for example, the government represented that it was listing all of its sentencing recommendations that it had proposed in January 6 cases to date, sorting them into three categories: "probation sentence without home detention," "probation sentence with home detention," and "incarceration." *See* Sentencing Table at 1–6, *United States v. Kostolsky*, 21-cr-197, Dkt. 41-1. In none of those cases had the government recommended, nor had a court imposed, a sentence consisting of both a term of imprisonment and a term of probation. *See id.* Beginning as early as that same month, however, the government changed its practice and began recommending compound sentences of incarceration *and* probation. *See, e.g.*, Gov't Sentencing Mem. at 15–16, *United States v. Spencer*, 21-cr-147 (CKK), Dkt. 55. Now, the government includes these proposed compound sentences under the heading "incarceration," even though the sentences also include a proposed term of probation. *See* Sentencing Table, Dkt. 27-1.

become aware of such a sentence.  If examples exist, they are few and far between.  The caselaw's silence speaks volumes.

Out of the approximately one thousand January 6 defendants that the government has charged to date, hundreds have entered into agreements with the government to plead guilty to a single petty misdemeanor offense.   Both before those agreements are reached and before defendants are sentenced, prosecutors have wide latitude to seek criminal sanctions that reflect the unprecedented nature and devastating consequences of the Capitol riot.   And judges too are permitted, and indeed compelled, *see* 18 U.S.C. § 3553(a)(1), to consider the unique "nature and circumstances of the offense" when exercising their discretion at sentencing.  But discretion—both prosecutorial and judicial—has its limits.  For a criminal sentence to be lawful, "[t]he legislative authority of the Union must first make an act a crime, affix [such] punishment to it, and declare the Court shall have the jurisdiction of the offence." *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812).  In our criminal justice system, "[l]egislatures, not courts, prescribe the scope of punishments." *Hunter*, 459 U.S. at 368.

If the government seeks to pursue a sentence that includes both imprisonment and supervision, it has several lawful options.  The government may, where supported by the facts of the case, charge a defendant with violation of a felony or a Class A misdemeanor, both of which allow for imprisonment followed by a period of supervised release.  *See* 18 U.S.C. § 3583(b). Alternatively, the government may charge two (or more) petty offenses, seeking probation on one and imprisonment on another.  *See id.* § 3561(a)(3), (c).  Or, in a case in which the government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of *intermittent* confinement as a condition of probation.  *See id.* § 3563(b)(10).  What the government cannot request, and what the

19

Court lacks the authority to impose, is a compound sentence of a term of imprisonment *and* a term of probation—two distinct, mutually exclusive punishments under the SRA—for the same offense.

For the foregoing reasons, the government's request for a compound sentence is denied. The Court's sentence is reflected in a separate judgment of conviction, Dkt. 32.

DABNEY L. FRIEDRICH
United States District Judge

January 25, 2023